Calvin HOE, Chester Uyemura, and George Fukumitsu, Plaintiffs,

v.

Clifford ALEXANDER, Secretary of the Army; Benjamin Schlapak, District Engineer, U. S. Army Engineer District, Honolulu, U. S. Army Corps of Engineers; Ramon Duran, Director, Department of Parks and Recreation of the City and County of Honolulu; Tyrone Kusao, Director, Department of Land Utilization of the City and County of Honolulu, Ryokichi Higashionna, Director, Department of Transportation, State of Hawaii; Susumu Ono, Chairman of the Board of Land and Natural Resources; the Department of Land and Natural Resources, State of Hawaii; Hideto Kono, Director, Department of Planning and Economic Development, State of Hawaii, Defendants.

Civ. No. 79–0433.

United States District Court,
D. Hawaii.

Jan. 29, 1980.

Ronald A. Albu, Legal Aid Society of Hawaii, Honolulu, Hawaii, for plaintiffs.

Stephen D. Tom, Asst. U. S. Atty., Walter M. Heen, U. S. Atty., Adrienne Sepaniak, Deputy Corp. Counsel, City and County of Honolulu, Terence S. Yamamoto, and Gerald C. Yoshida, Deputy Attys. Gen., Wayne Minami, Atty. Gen. of Hawaii, Honolulu, Hawaii, for defendants.

## ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND PERMANENT INJUNCTION

PENCE, District Judge.

### BACKGROUND FACTS

Kualoa Regional Park is a public recreational area of approximately 150 acres developed by the City and County of Honolulu. It is located at the northern limit of Kaneohe Bay, on the northeast coast of the island of Oahu, and is bounded on its east and south sides by the sea. The park is within the Ahupua'a of Kualoa, an area listed on both the State and National Register of Historic Places. Along the park's eastern coastline, archeological artifacts have been discovered, and these artifacts provide valuable information regarding prehistoric Hawaiian activities in the area.

Unfortunately, both time and tide have taken their toll on the park. As a result of constant shoreline erosion, over six acres of park land have been lost since 1949, and the average yearly loss of shoreline is approximately five feet. Landscaping and trees have been damaged or destroyed by wave action, and the very existence of the archeological artifacts is gravely threatened.

In 1974, the City and County of Honolulu and the State of Hawaii requested assistance from the Army Corps of Engineers in trying to solve the erosion problem. The Corps eventually formulated a plan to assist the local governments in controlling the erosion. A Detailed Project Report, issued in September 1977, contained a discussion of the development of the proposed plan, a report on the public hearing conducted, as well as an Environmental Impact Statement.

The project was undertaken pursuant to the authority granted the Secretary of the Army by Section 103a of the River and Harbor Act of 1962. The plan calls for the widening of 3500 feet of beach along the eastern shore of the park by dredging approximately 45,000 cubic yards of sand from a sandbar located some 600 feet or more off the southern shore of the park. The sandbar itself is not within the bounds of the National Historic site. The sand is to be dredged by means of a hydraulic suction dredge and carried by pipeline on to shore where it will be placed in settling basins to dry. When dry, the sand is to be moved to the eastern shoreline to widen the eroded bench. The project is to take about nine months, and is to be repeated every four years, if necessary.

Plaintiffs filed a complaint in this action on October 4, 1979. The named defendants were the Secretary of the Army, an official from the Corps of Engineers, the Director of the Department of Parks and Recreation for the City and County of Honolulu, the Director of the Department of Land Utilization for the City and County, the State Director of the Department of Transportation, the Chairman of the Board of Land and Natural Resources, the Board itself, and the Director of the State Department of Planning and Economic Development. Plaintiffs claimed violations of the River and Harbor Act of 1962, the Coastal Zone Management Act of 1972, the National Environmental Policy Act of 1969, the National Historic Preservation Act (and regulations appurtenant thereto), as well as various state statutes. In their complaint, plaintiffs indicated their claim arose under 42 U.S.C. § 1983 (1976), the Administrative Procedure Act, the Coastal Zone Management Act, the regulations passed pursuant to the National Historic Preservation Act, the National Environmental Policy Act, and the various state statutes. Jurisdiction of

the Court was based on the concept of pendent jurisdiction, as well as 28 U.S.C. §§ 1331, 1337, 1343, and 1361. Plaintiffs claim to be persons who rely on subsistence fishing around the sandbar to be dredged in the project. Plaintiffs contend the project will significantly impair their ability to fish around the sandbar.

On October 17, 1979, plaintiffs filed a motion for preliminary injunction. A hearing on that motion was conducted by Judge McNichols on November 3, 1979. Judge McNichols, at the close of the hearing, denied the motion.

On November 5, 1979, the Corps of Engineers awarded a construction contract to implement the project, and work has commenced. On December 18, 1979, plaintiffs filed the motion for summary judgment and permanent injunction that is the subject of this Order. A hearing was held on the motion on January 11, 1980.

## DECISION

Plaintiffs have moved for summary judgment in this matter, and have asked the Court, upon granting the motion, to permanently enjoin further work by the Corps of Engineers on the Kualoa Beach Erosion Control Project. The motion is *denied.*

Plaintiffs' first claim is that the project undertaken by the defendants to control beach erosion at Kualoa Regional Park is in violation of Section 103(a) of the River and Harbor Act of 1962, 33 U.S.C. § 426g (1976). The project itself is partially funded by the federal government, pursuant to Section 103(a) (also codified as 33 U.S.C. § 426e (1976)), which requires, *inter alia*, that local governing bodies commit themselves to pay for all costs above a one million dollar ceiling on federal contributions. Section 221 of the River and Harbor and Flood Control Act of 1970, 42 U.S.C. § 1962d–5b(a) (1976), in addition requires that the Secretary of the Army enter into a written agreement with the government bodies that will receive the benefit of water resource projects such as the Kualoa Beach Erosion Control Project. Plaintiffs claim that the local government agencies involved in this suit

have not validly appropriated money for the project, and hence the project must be enjoined by this Court.

Defendants claim that (a) the River and Harbor Act of 1962 confers no private right of action; (b) plaintiffs have no standing in any case; and (c) even if they do, all statutory requirements have been fulfilled.

■ Plaintiffs present arguments based on Hawaii statutes, and claim that the actions taken by the Director of the Department of Transportation and by the City Council of the City and County of Honolulu, purporting to authorize the spending of state funds, were *ultra vires* and void. Were plaintiffs alleging that the federal defendants had acted in bad faith and accepted obviously fraudulent or *ultra vires* commitments of money, the Court might proceed to the question of whether a private right of action exists. However, the Court views this controversy as the functional equivalent of a state taxpayers' suit, the basis of which is that tax moneys are being illegally spent by state officials. This is a state question, calling for the interpretation of state statutes, and this Court will not make a determination that is fundamentally for the courts of Hawaii to make. This Court therefore abstains from determining whether any of the actions of the state defendants were *ultra vires* or otherwise contrary to state law.

■ Plaintiffs next claim that there was a clear violation of the Coastal Zone Management Act of 1972, 16 U.S.C. § 1451 *et seq.* (1976). Sections 307(c)(1) and (2) (16 U.S.C. §§ 1456(c)(1) & (2)) of that Act require federal agencies that engage in projects affecting state coastal zones, or that undertake development projects in such zones, to ensure that such projects or developments are "to the maximum extent practicable, consistent with approved state management projects." 15 C.F.R. § 930.38, which governs coastal zone management consistency determinations for federal activities, reads in pertinent part:

(b) A consistency determination shall be required for major, phased Federal

development project decisions described in § 930.37(c) which are made following management program approval and are related to development projects *initiated prior* to program approval. . . . *This provision shall not apply to phased Federal decisions which were specifically described, considered and approved prior to management program approval* (e. g., in a final environmental impact statement issued pursuant to the National Environmental Policy Act). (emphasis added)

The Kualoa Beach Erosion Control Project is a phased development project which calls for an initial construction phase of approximately nine months, and subsequent sand renourishment phases every four years. The phased federal decisions are outlined in the Kualoa Project Final Environmental Impact Statement which is dated September 1977. The Hawaii Coastal Zone Management Program was not approved until September 1978. It therefore appears that pursuant to 15 C.F.R. § 930.38 no consistency determinations were required.

Even if this question were put to one side, however, the Court questions plaintiffs' arguments on the merits. Plaintiffs' first contention is that the project violates state law, and hence cannot possibly meet the CZMA consistency requirements. The statute plaintiffs claim is violated is Haw. Rev.Stat. § 205–33(a), which prohibits certain sand dredging within 1000 feet of the shoreline, in water less than thirty feet deep. Although plaintiffs' exhibit "C", the memorandum opinion from the attorney general's office, is not necessarily dispositive of the issue, it certainly raises substantial questions as to the validity of plaintiffs' argument. Were the question of the applicability of this statute to the Kualoa project before the Court, it would abstain, because, as stated heretofore, the interpretation of state statutes is a matter for the courts of the State of Hawaii, and this statute remains unconstrued by them.

Plaintiffs' next contention, again under the consistency requirements of the CZMA, is that the defendants failed to obtain a state special area management permit. Chapter 205A of the Hawaii Revised Statutes designates certain areas within the coastal zone as special management areas, and requires those who would develop within those areas to obtain special area management permits. Defendants obtained such a permit for certain of their activities above the high water mark, and were informed by George Moriguchi, Director of Land Utilization, that "[a]ll other work on this beach restoration project lies outside the SMA and therefore requires no permit . . ." (Exhibit 6 to State defendants' Memorandum in Opposition to Motion for Summary Judgment)

Though it is not made clear in their memorandum, it appears that plaintiffs are arguing that although the area below the high water mark is not *now* within the special management area, after the project the high water mark will be changed, and hence "land" that is now below the high water mark will after the project be above it. Plaintiffs therefore contend that since that land will eventually be within the SMA, an SMA permit must *now* be obtained. The merit of this argument is, to say the least, questionable. However, even if plaintiffs were able to demonstrate that the consistency requirements of the CZMA *were* applicable to this project, the Court would then abstain since it would be required to interpret state statutes, and decide when state permits would be required. As noted above, this Court is not about to break new ground in dealing with such heretofore uninterpreted provisions of state statutes.

■ Plaintiffs' next claim is that the National Historic Preservation Act was violated. The Act, codified at 16 U.S.C. § 470 *et seq.* (1976), and the regulations enacted pursuant to it and Executive Order 11593 (36 C.F.R. Part 800), set forth a path for a federal agency to follow in planning projects that may affect a property listed on the National Register of Historic Places. The federal defendants here followed that path, and their efforts were culminated with a determination by the National Coun-

cil on Historic Preservation that the project had no adverse effect on the Kualoa Ahupua'a (see exhibits "C–3" and "C–15" to federal defendants' Memorandum in Opposition to Motion for Summary Judgment). In addition, the federal defendants kept in constant touch with the Historic Preservation Officer for the State of Hawaii.

Plaintiffs nevertheless claim that because the adverse effects of the dredging operations were not properly considered, the Act and its implementing regulations were violated. It appears from the record that the sandbar to be dredged lies outside the boundaries of the Ahupua'a. Manifestly, then, plaintiffs are not entitled to summary judgment. While plaintiffs may proceed on this issue, the Court is in no way foreclosing defendants from raising standing or other related objections to the cause of action.

Plaintiffs' final claim is that the National Environmental Policy Act was violated in that an improper Environmental Impact Statement was prepared. Plaintiffs claim there is a possibility that the dredging project could release a substance into the water that would poison fish, and cause ciguatera in humans if those fish were eaten. That possibility was not discussed in the EIS. The Ninth Circuit has stated that an "EIS need not discuss remote and highly speculative consequences." *Trout Unlimited v. Morton*, 509 F.2d 1276, 1283 (9th Cir. 1974).

Plaintiffs' proffered evidence on this claim on its face shows that the "possible" consequences are so remote and highly speculative that this Court finds the claim without any merit at all.

For the above reasons, plaintiffs' motion for summary judgment and permanent injunction is denied, and

IT IS SO ORDERED.